David Lee CROPPER, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 09SC828.

Supreme Court of Colorado, En Banc.

March 14, 2011.

Rehearing Denied April 25, 2011.

Douglas K. Wilson, Public Defender, Rebecca R. Freyre, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

In this case, we review the constitutionality of section 16–3–309(5), C.R.S. (2010), as applied to petitioner, David Lee Cropper.[1] We hold that, based on *Hinojos–Mendoza v. People,* 169 P.3d 662 (Colo.2007), Cropper waived his confrontation rights and, therefore, the statute was constitutional as applied. Accordingly, we affirm the decision of the court of appeals.

## I. Facts and Proceedings Below

After a jury trial, Cropper was convicted of second degree burglary and theft. Pursuant to Crim. P. 16, prior to trial, the prosecution provided Cropper a list of the witnesses that it planned to call at trial as experts in the area of forensic chemistry. Included in the list was a technician who prepared a report showing that a shoe-print left on a door that had been kicked in to obtain entry could have been from the same type of shoe that Cropper was wearing when he was apprehended.[2] At trial, Cropper objected to the admission of this report because the technician who prepared it was not available to testify due to an out of state family emergency. Cropper contended that introduction of the report without testimony from the technician who prepared it violated his rights of confrontation and cross-examination.

Relying on the procedures set forth in section 16–3–309(5), the trial court found that Cropper had not notified the prosecution within the stated ten-day limit that he wished for the technician to testify and, for this reason, admitted the report. With the aid of supplemental briefing regarding the then recently decided *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the court of appeals upheld the admission of the shoe-print report, holding that Cropper's failure to follow the procedural requirements in section 16–3–309(5) resulted in a waiver of his confrontation rights.

## II. Analysis

### A. The Right to Confrontation and Section 16–3–309(5)

■■■ The Confrontation Clause of the United States Constitution gives a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Likewise, the Colorado Constitution provides a criminal defendant the right "to meet the witnesses against him face to face." Colo. Const. art. II, § 16. Although this right is fundamental, it is not without limit, *People v. Mojica–Simental,* 73 P.3d 15, 19 (Colo.2003), and can be waived, *Melendez–Diaz,* 129 S.Ct. at 2534 n. 3. A defendant's counsel may waive his client's confrontation right. *Taylor v. Illinois,* 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("the client must accept the consequences of the lawyer's decision to forgo cross-examination"); *People v. Curtis,* 681 P.2d 504, 511 (Colo.1984) ("[D]efense counsel stands as captain of the ship. ... [D]ecisions committed to counsel include ... whether and how to conduct cross-examination ..." (internal quotations and citations omitted)). And, in some instances, defense counsel's inaction alone is sufficient to constitute a waiver. *Melendez–Diaz,* 129 S.Ct. at 2534 n. 3. ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence....").

■■■ The Confrontation Clause is implicated when testimonial hearsay is admitted against a criminal defendant. To comply with the Confrontation Clause, testimonial hearsay may only be admitted if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the de-

---

1. We granted certiorari to determine:

   Whether the court of appeals erroneously concluded counsel's inaction under section 16–3–309(5) constituted a valid waiver of petitioner's state and federal confrontation rights under this Court's decision in *Hinojos–Mendoza,* contrary to well established federal and state law concerning the waiver of constitutional rights and this Court's decision in *Mojica–Simental.*

2. The detective who ultimately testified about the report stated that a shoe-print analysis is not like a fingerprint analysis where there are unique prints for each individual. Instead, he testified that the report indicated that "it could be [the same shoe], because, of course, there are other shoes like that out there ... that could have made the same mark."

clarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Both this Court and the United States Supreme Court have determined that forensic lab reports are testimonial hearsay subject to these confrontation clause requirements. *Melendez–Diaz*, 129 S.Ct. at 2532; *Hinojos–Mendoza*, 169 P.3d at 666–67. Therefore, for a forensic report such as the shoe-print analysis at issue in this case to be admitted, the defendant must, at some time, have an *opportunity* to cross-examine the technician who prepared it.

Section 16–3–309(5) recognizes this requirement. It states that:

Any report or copy thereof or the findings of the criminalistics laboratory shall be received in evidence in any court, preliminary hearing, or grand jury proceeding in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person. Any party *may request that such employee or technician testify in person at a criminal trial* on behalf of the state before a jury or to the court, *by notifying the witness and other party at least ten days before the date of such criminal trial.*

§ 16–3–309(5) (emphasis added). Based on this statute, a criminal defendant may invoke his confrontation right by notifying the prosecution at least ten days prior to the date of trial that he wishes to exercise his opportunity to cross-examine the technician who prepared the report. *Id.*

In *Mojica–Simental*, we found that this procedure does not impose an undue burden on the defendant and adequately protects a defendant's right of confrontation. 73 P.3d at 18–20. Thus, we held that section 16–3–309(5) is constitutional on its face. *Id.* at 18. But, in dicta, we cautioned that section 16–3–309(5) could be applied unconstitutionally if the defendant's right of confrontation was not waived voluntarily, knowingly, and inten-

tionally. *Id.* at 20 (citation omitted). Specifically, we stated that there might be a constitutional problem "[i]f a defendant does not have actual notice of the requirements of the statute, or mistakenly fails to notify the prosecution to have the technician present to testify...." *Id.* at 20–21. We also listed a series of factors that a trial court might consider to determine if there was a valid waiver of the right of confrontation.[3] *Id.*

In *Hinojos–Mendoza*, we reaffirmed the constitutionality of section 16–3–309(5) and acknowledged that the dicta in *Mojica–Simental* was misplaced because it was based on the mistaken assumption that a defendant can only waive his right of confrontation if he personally makes a knowing, voluntary, and intentional waiver. 169 P.3d at 669. Instead, we confirmed that defense counsel can waive a defendant's right to confront the technician who prepared a forensic report by not complying with the procedural requirements in section 16–3–309(5), even if the attorney is unaware of the statute or its requirements. *Id.* at 670 ("where a defendant ... is represented by counsel, the failure to comply with the statutory prerequisites of section 16–3–309(5) waives the defendant's right to confront the witness just as the decision to forgo cross-examination at trial would waive that right").

In *Hinojos–Mendoza*, the defendant argued that his right of confrontation was violated when he was denied the opportunity to cross-examine a technician who prepared a lab report that the prosecution entered into evidence. *Id.* at 664. The defendant's attorney did not follow the requirements set forth in section 16–3–309(5) and failed to request an opportunity for cross-examination before trial because he was unaware of the statute and its procedural requirements. *Id.* Because of our stated presumption that an attorney knows the applicable procedural rules, we held that defense counsel's failure to request live testimony from the technician was

---

**3.** Specifically:

whether an attorney or a pro se litigant actually knew that he was required to notify the opposing party of his desire to have the witness present; the reasons why notice was late or was not given at all; the difficulty of acquiring the presence of the witness; the significance to the case of the report and of the testimony that would be elicited from the technician; and any other pertinent circumstances.

*Mojica–Simental*, 73 P.3d at 21.

a valid waiver of the defendant's confrontation right even though the attorney did not have actual knowledge of section 16–3–309(5)'s requirements. *Id.* at 670.

### B. *Melendez–Diaz* and Notice–and–Demand Statutes

In supporting its decision to classify forensic lab reports as testimonial hearsay, the Supreme Court discussed a category of state statutes, which it labeled as notice-and-demand statutes, that provide procedures similar to those in section 16–3–309(5). *Melendez–Diaz*, 129 S.Ct. at 2540–41. As the Court stated, "[m]any States ... permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Id.* (citations omitted). It clarified that a "defendant *always* has the burden of raising [a] Confrontation Clause objection [and] notice-and-demand statutes simply govern the *time* within which [a defendant] must do so." *Id.* at 2541. It then cited *Hinojos–Mendoza* for the proposition that it is permissible to require a defendant to exercise his Confrontation Clause rights before trial with a parenthetical stating that *Hinojos–Mendoza* "discuss[ed] and approv[ed of]" Colorado's notice-and-demand provision." *Id.* Despite its discussion of *Hinojos–Mendoza*, the Supreme Court did not pass judgment on section 16–3–309(5).[4]

■ Although Cropper does not bring a facial challenge, he argues that section 16–3–309(5) is different than the notice-and-demand statutes that the Supreme Court discussed favorably in *Melendez–Diaz* because it does not require that the prosecution give pre-trial notice of its intent to introduce a forensic lab report without live testimony. This difference, Cropper contends, not only makes it incompatible with the dicta from *Melendez–Diaz*, but also goes against this Court's dicta in *Mojica–Simental* which stated that:

> section 16–3–309(5) might be best utilized if the proponent of the lab report notifies the opposing party that it intends to introduce the lab report without a foundational lab technician witness, unless advised ten days before trial that the witness' presence is desired, and the parties discuss the matter, at some pre-trial opportunity, to ensure that all parties are in agreement as to whether the witness will be present.

73 P.3d at 21. We disagree and hold that providing the defense with a forensic lab report through discovery is sufficient to put the defendant on notice that, absent a specific request under section 16–3–309(5), the report can be introduced without live testimony.

### C. Application to this Case

In this case, although Cropper did not have specific notice that the prosecution intended to proceed without live testimony, he did have notice that the prosecution intended to introduce the shoe-print report. Pursuant to Crim. P. 16, Part I(a)(1)(III), a prosecutor is required to provide the defense with "[a]ny reports or statements of experts made in connection with the particular case, including results of ... scientific tests, experiments, or comparisons." The prosecution must provide these reports "as soon as practicable but not later than thirty days before trial." Crim. P. 16, Part I(b)(3).

■ The record reflects that the prosecution provided Cropper with the shoe-print report early in the discovery process. Although the prosecution included the technician in its list of experts who "are expected to testify in the area of forensic chemistry,"[5] the prosecution introduced the report without the technician because he was out of state due to a family emergency.[6] Regard-

---

4. The Supreme Court denied certiorari in *Hinojos–Mendoza* just four days after it released its decision in *Melendez–Diaz*. *Hinojos–Mendoza v. Colorado*, —— U.S. ——, 129 S.Ct. 2856, 174 L.Ed.2d 600 (2009).

5. Cropper argues that, based on this list, he expected the technician to testify. Only one of the six witnesses from that list actually testified

at trial. Cropper did not object or claim bad faith as to the failure of the prosecution to make any of the other witnesses available.

6. In addition to the original witness list that the prosecution provided pursuant to Crim. P. 16, the prosecution provided a "good faith witness list" the day of trial that contained the name of the technician. Cropper argues that the prosecu-

less of any representations that the prosecution made that the technician would testify, Cropper had notice of the presence of the report and had an adequate opportunity to assert Cropper's confrontation rights and request that the technician be present for cross-examination.

The facts in this case are essentially the same as those in *Hinojos–Mendoza.* Thus, to reach our decision in this case, we need only look to and apply the same reasoning that we employed in *Hinojos–Mendoza.* Cropper's attorney did not avail herself of the opportunity to assert Cropper's confrontation rights by objecting to the introduction of the shoe-print report without live testimony within section 16–3–309(5)'s ten-day time limit because she did not understand section 16–3–309(5), its requirements, or its applicability.[7]

We decline Cropper's request that we apply the dicta from *Mojica–Simental* and thereby relax the requirements of section 16–3–309(5) because the defendant "d[id] not have actual notice of the requirements of the statute, or mistakenly fail[ed] to notify the prosecution to have the technician present to testify. . . ." 73 P.3d at 20–21. In *Hinojos–Mendoza,* we stated that "we presume that attorneys know the applicable rules of procedure" and found section 16–3–309(5) applicable despite the fact that the defendant's attorney *did not* know the applicable rules of

procedure. 169 P.3d at 670 (citation omitted). Today, we apply *Hinojos–Mendoza*'s holding and recognize that an attorney is expected to know the applicable rules of procedure.[8] Further, we assume that when an attorney fails to comply with the procedural rules set forth in section 16–3–309(5) the attorney has made a decision to waive defendant's right of confrontation regardless of whether the attorney knew of or understood the statute or its requirements.[9] Because Cropper's attorney did not follow these procedures, she waived Cropper's right of confrontation.

### III.  Conclusion

We hold that section 16–3–309(5) is constitutional as it was applied to Cropper. He received sufficient notice of the existence of the shoe-print report and the potential that it would be introduced at trial. His attorney's ignorance as to section 16–3–309(5)'s requirements does not alter our decision. Therefore, we affirm the decision of the court of appeals.

Justice MARTINEZ dissents, and Chief Justice BENDER joins in the dissent.

Justice MARTINEZ, dissenting.

I respectfully disagree with the majority's presumption that defense counsel's misunderstanding of section 16–3–309(5), C.R.S.

---

tion acted in bad faith by including the technician on that list and that he was justified in relying on this list. This reliance, regardless of its validity, did not affect Cropper's failure to comply with section 16–3–309(5). Because the list was delivered the day of trial, it would not have affected Cropper's ability to make a timely demand for the technician to be present.

7.  After Cropper's attorney objected to the introduction of the report, she explained her understanding of the statute to the judge:

> My understanding is that that refers to, like a preliminary hearing and at trial we have a confrontational right, especially as to conclusory statements by witnesses.
> . . .
> The context of 16–3–309 talks about the destruction of evidence as far as the defendant's ability to have access to it.
> . . .
> We think it's not applicable because we believe this statute, in particular, is—refers to basically

the destruction of evidence and the potential for the defendant to have access to that evidence. Certainly this is not the situation where there's any inclination that Mr. Martinez, could not testify that—I think that's our primary objection.

The next day, Cropper's attorney elaborated on her objection in chambers and explained that:

> When the Court had asked me if I filed a motion required by the subsection, I will tell the Court that I had no inclination whatsoever that there was a ten-day requirement that I had an affirmative obligation to basically demand that the District Attorney produce their witnesses.

8.  It is also important to note that section 16–3–309(5) is not a new statute. It has been in effect since 1984.

9.  This is not to say that a client would not have a colorable claim for malpractice against his or her attorney.

(2010), and consequent failure to comply with its requirements, constituted a valid waiver of Cropper's fundamental right to confrontation. Accordingly, because Cropper did not waive his right to confrontation, I conclude that section 16–3–309(5) was not applied constitutionally in the instant case.

Generally, the U.S. Supreme Court has refused to presume waiver of a fundamental constitutional right from a defendant's inaction. In *Johnson v. Zerbst,* the Court defined the waiver of a fundamental constitutional right as "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Carnley v. Cochran,* the Court further explained that

> [t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Due to these requirements for a valid waiver, the Court has steadfastly refused to presume the waiver of a defendant's constitutional rights from inaction alone. *See e.g., Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[A] valid waiver will not be presumed simply from the silence of the accused after [*Miranda* ] warnings are given or simply from the fact that a confession was in fact eventually obtained."); *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (requiring an "affirmative showing" in the record that a guilty plea was knowing and voluntary). Thus, in *Barker v. Wingo,* the Court held that "presuming waiver of a fundamental right from inaction [ ] is inconsistent with this Court's pronouncements on waiver of constitutional rights." 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The Court has, however, required affirmative conduct on the part of the defendant to exercise certain constitutional rights. For example, in *Taylor v. Illinois,* the Court explained that the defendant must take affirmative steps to activate the right to compel the presence and present the testimony of witnesses. 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

> [T]he right to compel the presence and present the testimony of witnesses provides the defendant with a sword that may be employed to rebut the prosecution's case. The decision whether to employ it in a particular case rests solely with the defendant. The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct.

*Id.* at 410, 108 S.Ct. 646. Accordingly, because the defendant in *Taylor* had failed to comply with a discovery rule requiring pretrial disclosure of defense witnesses, the Court concluded that the defendant had failed to exercise his right under the Compulsory Process Clause. *Id.* The Court thus approved of the trial court's sanction precluding the defendant's witness from testifying at trial. *Id.* at 418, 108 S.Ct. 646.

In *Melendez–Diaz v. Massachusetts,* the Court relied on the reasoning in *Taylor* to support its position that a defendant must exercise the right to confrontation. —— U.S. ——, 129 S.Ct. 2527, 2541, 174 L.Ed.2d 314 (2009). The Court emphasized that "[t]he defendant *always* has the burden of raising his Confrontation Clause objection[.]" *Id.* (emphasis in original). The Court then suggested that certain notice-and-demand statutes are constitutional because they "simply govern the *time* within which" the defendant must raise his right to confront a witness. *Id.* (emphasis in original). Crucial to the Court's reasoning was the fact that simple notice-and-demand statutes, unlike the variety of statutes receiving the notice-and-demand label,[10] require the prosecution to provide the defendant with actual notice.

> In their simplest form, notice-and-demand statutes *require the prosecution to provide notice to the defendant of its intent to use*

---

**10.** Commentators have identified at least four different types of statutes that receive the notice-and-demand label. *See* Jennifer B. Sokoler, Note, *Between Substance and Procedure: A Role for States' Interests in the Scope of the Confronta-* *tion Clause,* 110 Colum. L.Rev. 161, 182–86 (2010) (identifying simple notice-and-demand statutes, notice-and-demand "plus" statutes, anticipatory demand statutes, and defense subpoena statutes).

*an analyst's report as evidence at trial,* after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial.

*Id.* (emphasis added). This actual notice requirement, the Court explained, "permit[s] the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Id.* Thus, because the defendant receives actual notice of the requirement to object pre-trial and request the right to confront a witness, the Court suggested that simple notice-and-demand statutes are no different from requiring the defendant to raise a Confrontation Clause objection. In this light, the Court reasoned that simple notice-and-demand statutes "shift no burden whatever." *Id.*

The majority, however, fails to address the key distinction between the simple notice-and-demand statutes discussed favorably in *Melendez–Diaz* and Colorado's notice-and-demand statute found at section 16–3–309(5). Maj. op. at 437. To be clear, section 16–3–309(5) is not a simple notice-and-demand statute of the type approved in *Melendez–Diaz.* The fundamental problem is that section 16–3–309(5) eliminates the requirement on the prosecution to notify the defendant pretrial of its intent to admit a lab report without live testimony from the analyst. As a result, the defendant must anticipate, prior to trial and possibly without actual notice, whether to exercise the right to confront a witness. Statutes like section 16–3–309(5) are thus incompatible with the emphasis in *Melendez–Diaz* on the need for actual notice that "permit[s]" the defendant to exercise his right to confrontation pretrial.

In fact, Justice Kennedy, in his dissent in *Melendez–Diaz,* singled out Colorado's section 16–3–309(5) as potentially violating the Confrontation Clause. Kennedy criticized section 16–3–309(5) as "a burden-shifting statute requiring the defendant to give early notice of his intent to confront the analyst." *Id.* at 2558 (Kennedy, J. dissent). The Court responded to Kennedy's criticism by narrowly approving of simple notice-and-demand statutes that provide actual notice. *Id.* at

2541 (citing with approval Ga.Code Ann. § 35–3–154.1 (2006); Tex.Code Crim. Proc. Ann., Art. 38.41, § 4 (Vernon 2005); and Ohio Rev.Code Ann. § 2925.51(c) (West 2006)). Noticeably absent from the Court's list of approved statutes is section 16–3–309(5). Thus, by refusing to approve statutes that lack an actual notice requirement, the Court's reasoning in *Melendez–Diaz* actually casts doubt on the constitutionality of section 16–3–309(5) and other notice-and-demand statutes that fail to require the prosecution to provide actual notice to defense counsel.

The majority is further misplaced to the extent it implies that *Melendez–Diaz* approved of a presumption of waiver from a defendant's failure to follow the procedural requirements of section 16–3–309(5). Maj. op. at 437. In *Hinojos–Mendoza v. People,* this court stated that "we can infer from the failure to comply with procedural requirements that the attorney made a decision not to exercise the right at issue." 169 P.3d 662, 670 (Colo.2007). This presumption of waiver depended upon an underlying presumption—namely that an attorney knows the law and thus has notice of the applicable statutory requirements in section 16–3–309(5). *Id.* at 670. It was this underlying presumption that allowed the court to treat the attorney's inaction in *Hinojos–Mendoza* as a decision to waive the right to confrontation. In the instant case, the majority relies on *Hinojos–Mendoza* for the presumption that defense counsel was aware of the requirements of section 16–3–309(5) and thus made an informed decision to waive Cropper's right to confrontation. Maj. op. at 438.

*Melendez–Diaz* did not, however, approve of the presumption of waiver articulated in *Hinojos–Mendoza.* In *Melendez–Diaz,* the Court cited *Hinojos–Mendoza* for its holding that crime lab reports are testimonial. 129 S.Ct. at 2540 n. 11. The Court again cited *Hinojos–Mendoza* for the proposition that a defendant can be compelled to exercise his Confrontation Clause rights before trial. *Id.* at 2541. At no point, however, did the Court approve of *Hinojos–Mendoza*'s presumption of waiver.

To the contrary, *Melendez–Diaz* teaches that the presumption in *Hinojos–Mendoza* that an attorney knows the law is no substitute for actual notice of the prosecution's intent to introduce a lab report without live testimony. As noted above, *Melendez–Diaz* only approved of simple notice-and-demand statutes where the defendant has actual notice of the prosecution's intent to introduce a lab report without live testimony. By refusing to approve of other statutes that lack an actual notice requirement, the Court implied that the mere existence of a statute is an insufficient basis to presume that an attorney made an informed decision to forego the right to confrontation. Accordingly, to the extent *Hinojos–Mendoza* creates a presumption of waiver from inaction, that presumption is limited by *Melendez–Diaz* to those circumstances where the prosecution provides the defendant with actual notice of its intent to introduce a lab report without live testimony of the analyst.[11] That is, *Hinojos–Mendoza* teaches that a defendant's failure to exercise the right to confrontation amounts to a constitutionally sufficient communication of waiver only where the defendant has received actual notice of the prosecution's intent to submit a lab report without live testimony.

In the instant case though, the record demonstrates that the prosecution did not provide defense counsel with pre-trial notice of its intent to introduce the lab report without live testimony. Early in the discovery process, the prosecution provided defense counsel with a copy of the lab report analyzing the shoe-print. The prosecution also pro-vided defense counsel with a witness endorsement list that included the shoe-print technician. Neither of these prosecutorial actions, however, notified defense counsel of the prosecution's intent to offer the lab report pursuant to section 16–3–309(5).[12] Accordingly, defense counsel did not have actual notice that she needed to ask for the opportunity to cross-examine the technician and thus her failure to make that request was not a constitutionally sufficient communication of waiver.

In fact, the record demonstrates that defense counsel was unaware of the statutory requirements of section 16–3–309(5). When the prosecution moved to introduce the report without live testimony from the technician, defense counsel expressed surprise and stated that she had not been provided with notice that the technician would not appear at trial. Defense counsel further explained that she believed, albeit mistakenly, that section 16–3–309(5) did not apply to the report at issue. The record thus reflects that defense counsel was actually unaware of the requirements of section 16–3–309(5), thereby rebutting the majority's reliance on the underlying presumption in *Hinojos–Mendoza* that defense counsel knows the applicable rules of procedure.

Nonetheless, even though defense counsel was unaware of section 16–3–309(5) and lacked notice of the prosecution's intent to introduce the lab report without live testimony, the majority still presumes waiver from defense counsel's failure to comply with sec-

---

11. In *People v. Mojica–Simental,* we expressed our concern that section 16–3–309(5) did not contain an actual notice requirement. 73 P.3d 15, 21 (Colo.2003). Accordingly, we urged the proponent of a lab report to notify opposing counsel that it intended to offer the lab report without live testimony of the author. *Id. Melendez–Diaz* confirms the fundamental importance of our emphasis in *Mojica–Simental* on actual notice. In a case where the defendant receives actual notice of the prosecution's intent to introduce a lab report without live testimony of the analyst, *Melendez–Diaz* would permit the court to presume waiver from the defendant's inaction.

12. The majority believes that providing a defendant with a lab report through discovery is suffi-cient to put the defendant on notice of section 16–3–309(5). Maj. op. at 437–38. The disclosure of a lab report pursuant to Crim. P. 16 does not, however, provide a defendant with an indication of whether the prosecution will or will not call the expert who prepared the report. In other words, unlike simple notice-and-demand statutes, nothing in Crim. P. 16 requires the prosecution to identify those reports it intends to offer pursuant to section 16–3–309(5) versus those reports it intends to introduce with the live testimony of the analyst. Accordingly, providing defense counsel with lab reports through the discovery process is not equivalent to the actual notice required by the simple notice-and-demand statutes discussed favorably in *Melendez–Diaz.*

tion 16–3–309(5). The effect of the majority's conclusion is to create an irrebuttable presumption of waiver[13] and thus hold section 16–3–309(5) constitutional in every application.[14] Its strained logic, however, runs contrary to the facts in the record and the U.S. Supreme Court's steadfast refusal to presume waiver from inaction. *See Barker,* 407 U.S. at 525, 92 S.Ct. 2182; *see also Miranda,* 384 U.S. at 475–76, 86 S.Ct. 1602; *Boykin,* 395 U.S. at 238, 89 S.Ct. 1709.

Instead, based on the record and in accord with U.S. Supreme Court precedent, I conclude that defense counsel's inaction did not amount to a valid waiver of Cropper's right to confrontation. Cropper was, however, denied the right to confront the technician whose shoe-print report formed a crucial part of the prosecution's case identifying Cropper as a suspect at the scene of the burglary. Accordingly, I conclude that section 16–3–309(5) was applied unconstitutionally in the instant case.[15] Hence, I respectfully dissent.

I am authorized to state that Chief Justice BENDER joins in this dissent.

---

**13.** *See also Hinojos–Mendoza,* 169 P.3d at 671–75 (Martinez, J., dissent) (criticizing the majority for creating an irrebuttable presumption that an attorney knows the law even when the record in the case reflects the attorney's actual ignorance).

**14.** In *Mojica–Simental,* we unanimously held that section 16–3–309(5) was only facially constitutional because it could be applied constitutionally with a valid waiver. 73 P.3d at 20–21. The majority's decision, however, effectively reads out this requirement and, as a result, holds section 16–3–309(5) constitutional in every case, including those cases, like this one, where there is an invalid waiver.

**15.** My conclusion that section 16–3–309(5) was applied unconstitutionally in this case is in accord with our analysis in *Mojica–Simental,* stating that

"[i]f a defendant does not have actual notice of the requirements of the statute, or mistakenly fails to notify the prosecution to have the technician present to testify, there is a significant possibility that a defendant's failure to act may not constitute a voluntary waiver of his fundamental right to confrontation."

73 P.3d at 20–21.